Good morning. Please, important, I want to ask you to reply to Mr. Sheehy in five minutes if you would. I'll try to remind you. Thank you. This case is really quite simple. Mr. Sheehy seeks pay for about 15 minutes. He's been driving a train without passengers down First Street in San Jose. He was driving the train from Albright Station to the train yard on First Street. Today I'm going to mention short because you've asked for a time. The facts that you've heard this evening exempt with respect to whether or not this 15-minute break at the end, he wasn't, well, just before he drives the train into the final depot, whether or not that's part of his work or not. And so it's time for me why it was that he, in this last 15-minute break, was part of his work. Well, the regulations are clear that breaks are paid time in the end of contract, which means the breaks are paid time. Sure, but the dispute in this case is whether or not this was a real break or a break that your client gave himself right before he quit so that he could claim more overtime. So tell me why on this record he's not what you'd find in your favor. One of the reasons is that the D.T. did nothing about it. Well, is that true? What the record shows is he claimed overtime for some period of time. And what the record seems to show to me is that once they found out that the overtime, that some of the overtime was comprised of a 15-minute break right before he pulled the train into the station, their position was that's not authorized. Excuse me, I didn't see that. Take a look at page 11 of the opening brief. Well, the brief doesn't help me what they said. Tell me where in the record they said something different about this. It summarizes another brief that's probably cited. So I don't want to waste your time on it, just to be fair. So your argument is this was a real question of fact here, in part because for some period of time they paid him for this before they settled it. No. Okay, so what's a real fact question? In 2010, which is before the statute of limitations of this case, they sent somebody out one night, and that one night he found that what he did wasn't proper to pay him. But then they didn't do it again, and they didn't do anything. So how do you depart from that? Is their authorization or permission or approval of this established by their failures of the act as a jury? Well, I mean, yes. It's not a bad argument, just yes or no. Yes. Okay. So what other evidence do you have that the breaks were with the permission of the attorney? Well, he said in his declaration. What? He said we were always allowed to go to the bathroom as long as we don't delay passengers. Well, his declaration is a little vague, isn't it? He says we were always allowed. He doesn't say anybody told him he could. The declaration basically says, essentially being said now, she said we took the breaks and nobody yelled at me, but they didn't say they would deport him as long as they could. Well, there is also testimony from the president that she gets to take breaks routinely. A different job. Driving a bus that she didn't take. She doesn't say she took the breaks immediately before the last 10 or 15 minutes of her regular duties, right? She doesn't. Regularly. I was referred her to sign the arbitration, which was called an arbitration. Well, but was the 10 minutes of movement. Two questions here. One, how do we have arbitration in a lawsuit? It's not binding arbitration, I take it? It is binding, but it's an interpretation of the contract. So what? Nobody cites anything to us for the arbitration. Is there some preclusive effect of the arbitration? The opinion put in here was decided two weeks before the hearing for the trial judge. So you have a summary judgment hearing for the trial judge? Right. And you put into evidence the testimony of the president in the arbitration hearing? Yes, we put in portions of the transcript. Okay. So when I read that, what I see in it is you're saying not that I have a simple sort of set of circumstances that I took the bus to the bus depot at the end of the day and took 15 minutes right before I did, but just the way that I regularly took breaks. I mean, it's not disputed in this case that your client got paid for breaks during the day. I'm just asking the question whether or not, if there's testimony, whether or not your situation was roughly split. Well, that's the question you phrased by me today, but it was roughly split. Well, tell me what you said that you took breaks right at the end of the day. I think she did say that at the arbitration hearing. Well, before you get to that, let me ask you this. What kind of offering did you offer the union president's testimony for the purpose of showing that, one, the circumstances were similar to the plaintiff's taking the breaks or that the plaintiff persuasive interpretation of the contract permitting the breaks, or for what purpose did you offer the union president's testimony? For the purpose to show that if a person needs a bathroom break, they're allowed to take one. Even those five minutes before the end of the hearing? It was five minutes. Oh, even if it is? Any time you have to take a bathroom break? You have to go to the bathroom meeting, and you have to go to the bathroom, and you're allowed to take a bathroom break. Your evidence then is that because you can take a bathroom break any time that's authorized and therefore what wrote him in this case was wrong. He's wrong in a lot of ways. One, we offered him a regulation that says that you're supposed to call in before you take the bathroom break, and that's if you have a schedule with the passengers, but he didn't. He had no passports. He was never on your drive-back. Other than this, he is what you would think he is, whether this is authorized, whether this thing was authorized. Okay. Does that make sense to you? Because he has to be part of the work. For example, I suspect an employer can say no bathroom breaks at all. Tough job, but at least it wouldn't be. Then we have to fight about whether or not he was part of the job. This employer says you get four 15-minute breaks. Right. Yes. If he can get his 15 minutes by a vehicle, he can get it. Yeah, right. Supposedly. By a vehicle. If he worked full-time. Okay, if he worked full-time. And in this case, it seems to be not that your client is running to the bathroom occasionally at the end of the day, but that he routinely has to go into the bus station, took a 15-minute break, and then completed his job. Right? That's correct. Okay. So the question is whether that routine 15-minute break just before he completed his job was part of his work. It was authorized if it weren't, right? You know, if you look at the schedule, which is outlined in the case brief, he has a break on the 9th of June, and then he has another break again. And so, you know, sometimes people do need to go to the bathroom on their own. A couple hours later. Right. And 43 minutes before, sometime before he's due back in the yard, maybe three or five minutes in the future, he decides to go to the bathroom. It's safe because there's no passengers. No, I understand. I understand. I guess my question is a little bit different. If this were a case in which somebody came in and says, yeah, I pulled into the bus station, I had to use the bathroom, I did, and the employer won't pay me for it, that's one thing. But this is a case where I think the evidence is that your client, every day, you took a 15-minute break to see if the employee is still in the station, right? Right. Right. And so the employer says, that's not overtime, that's you planning your hours. But there are many, you know, I don't know if this is going to be the case, where a regulatory witness testified that a non-older man sometimes prosecuted him. We can take two different ones. Yeah, that's a good case. And so, you know, if it happens between 9-30, every night, and it's 12 hours, and I have a chance to have it again, I'll do it. Yeah, that saves you time for a run-on. I'll put a bit here on the clock when you come back. Thank you very much. Mr. Ryan. Thank you. Why don't you wait just one second here. You may proceed. Thank you, Your Honor. May it please the Court, my name is Paul Maughan, and I represent the Winston-Hewlett Relationship Division of the Winston-Hewlett Group. As the Court currently pointed out, this wasn't a once-or-twice occurrence. This took place in three years, from 2010 to 2011. So let me enlighten you on the record here, because I may be wrong about this. There are authorization break periods, right? Absolutely. Five. How many? In this particular instance, there was a break every, I think, 78 minutes, 78 minutes on an average of 15 minute breaks. And one of those occasions had a 30-minute break, and that was only an hour, possibly an hour and 40 minutes. And nobody disputes that those are part of the work? There is no dispute about that. So let me make the argument on the other side. Let me see how you respond to it. Your opponent says, well, this gentleman, an hour or so, maybe an hour and 15 minutes or so after the last stop, which is about right as it pulls into the last station, and he has to use it. And if he waited until he pulled the train all the way to his final destination, doesn't have to be too late to reach him. Why is it an authorized break? The break can be authorized if it's a question of whether or not he's convinced But you don't doubt that his time driving the train to its final destination, if he takes the break, is part of his work, do you? Absolutely, it is part of his work. Okay. So the question in this case is whether or not that break is part of his work, so that his entire day that results in overtime, right? Correct. So tell me, again, why it is that when he pulls into the last station, he can't come to the last stop? Well, he can't come to the last stop. Again, the question is whether the delay caused by the break he's having to overtime pay for that period of time, and he needs to be paid. I think he has a lessee who requires an employer who already gives an employee an hour and 40 minutes of break time per day, in addition to that, gives him 15 minutes per day. It's arbitrarily taken in the industry. He doesn't have a lessee, but what? A lessee requires that any breaks that are taken, usually the threat of the commonality between these and 40 minutes cases is that when the break or the extension of that work serves some benefit for the employer here in this case, these arbitrary breaks are manufactured. He says he was provided a declaration saying that he was permitted to take this break without a client dispatch, but doesn't that get him passed summary judgment? It does not get that declaration. He's not supported by any evidence, and you'll talk about it, but it's actually contradicted by the evidence of the record. We have a operator, light rail operator. If it's contradicted, it doesn't help you, because contradicted means we've resolved it, and the trial line is a re-judgment. The real question is why did you do this? What does that have to do with the declaration itself? Is that enough to create a fact question about whether... Let's say we agree with you. The FSOA doesn't require you to take a break here, but if you did, if you authorized it to, you still have to pay for it, right? Really? Okay, so the question, he says it was authorized. He says it, I think, in a pretty simple fashion without, let's say, co-authorized it, but is that enough? As this court pointed out, in FTC v. AOB, 604-FPD, where the novel nearly presents its full denial of facts, the declaration, the court may not find a genuine astute fact if the particular declaration wasn't then corroborated and censored. Well, but this is not a denial. This is an assertion. His assertion is that I was allowed to take these breaks because I must admit that if you were, you know, if you were a child, if you went to a child welfare center, who allowed you? You know, I guess the court, like, the poor person told you, you couldn't go unless you considered a date for this, and you didn't. But all of these things, the co-authorized break, you know, without going into the basic of the co-authorization, that's what you're going to leave on your own. It is confusing. I mean, there are many facts to support you, or as long as there's anything about the facts. Right. The real question is whether this is a fact, not whether there's a mountain under your feet or something that's wrong with your judgment. So your position is that when he said it was authorized, that's a legal conclusion. Just as he would say, if he said this was authorized by Joe Glow, that would not be a legal conclusion. That would be a fact. Right. So what do we do with the union president's testimony? The union president's testimony, she was a bus operator for 30 years. She has no experience, like I said. She's already talking about taking breaks on the bus side, which is completely different. This is a relatively new term. Now, even if, going back to the previous point, even if these breaks were permitted, whether they're compensable, that's a wholly separate issue. Again, it would mean that there's no authority under the Uniform Decision. But that's what the district court said. The district court didn't introduce that issue, did it? No. The district court found that there's absolutely no material issue with that. Right. To be clear, the district court found that there was no evidence that the breaks were authorized. Correct. But there's certainly multiple. I couldn't remember if they're permissible or if they're compensable. No, you're wondering if it could be permissible and not be compensable in that. For example, Mr. Flynn mentioned the type of out-of-prosecution condition and if an employee had an out-of-prosecution condition that required him to use the restroom every single day at the end of his line, PT would accommodate that based on the medical records. After getting the right information from the doctor, we would figure out exactly how much time he needed to provide that time and power. That accommodation doesn't automatically result in a overtime compensability. So I take it your position is that in this case, let's assume no one disputes that he had to go to the bathroom each time he used the restroom. I know that's not the issue in this case, but let's assume that no one disputes that. Your view is that, well, we give him regular standard breaks and you can take it or we're not going to penalize you for it, but if I know we're going to pay you for it, is that your position? That's correct. Okay. On top of that, I mean, there's specific facts that are going forward. PT's conclusion in the NINE was going to request a supervising team supervisor who went to the terminal station to figure out what was going on. This was the employee himself admitting that he used to come directly back to the ER, but since PT had his scheduling done by 5 minutes, he has decided to take a 15-minute rest period before returning to the ER. When you say cut his schedule time, do you mean cut his expense of the time, or the time during which he had to have it there? That's correct. So basically what happens is PT goes through regular audits and schedules to make sure that his schedule don't meet the lines of our operators. When you say schedule, you mean the schedule the train is operating? Yes. So say, for example, if we've obliged from point A to point B 40 minutes for operators to cover that distance, our field data shows that it really only takes operators 30 minutes, and we subtract that time to reflect the reality of the situation here. And that doesn't reduce the amount of work time that the game is producing? It does. So he's getting paid for 5 minutes less? That's correct. So in order to recoup the 7 1⁄2 minutes of pay that he was losing after the schedule change, he himself can't do the field supervisor thing. He's spending 15 minutes at the Badger before returning to the ER. What about the argument that your opponent makes that for years you paid just without complaint? Does that demonstrate... Is that evidence of authorization? No. It wasn't for years. It was for months. It was when he first started requesting overtime after the schedule change. We had no reason to doubt him. We believed, okay, he must be going to bathroom, something's happening, and he paid for all of his overtime requests in the beginning. And then you investigated. And that's hidden, because this happened every single day, month after month after month, and it just didn't make sense because we had three other operators that were traveling the same route. Nobody ever complained about how quickly two servants died, but they came in late, 15 minutes late. So we investigated, and based on our investigation, we refused to pay overtime when he was dying as a result. Thank you. Thank you. So we'll put a minute on the clock for you. So briefly, a couple of things. I want to say a couple of things. First of all, we just need to get as high as we are in 40 minutes, and we're going to shift some of this to a different category, but I do want to discuss some of the detail that we're going to talk about. So I'm going to say a couple of things, and then I'll come back to you when you're ready to talk to me. Let me do that. I know you've got something specific. Is it going to be just a minute, or is it going to be a drop of some kind? Because it looks to me like a protest, a reduction of time. Your client decided to add 15 minutes to his minutes anytime, every day, as opposed to, oh, my God, I've got to go. He decided that he'd make his schedule 15 minutes a week. And why was that? Well, because he could have written you up. He could have given you a one-day suspension, a five-day suspension. He didn't do anything for over three years, three years. He didn't do anything, but he takes the advice. Why didn't he just do that? They say the reason was because you took an unauthorized right, but you didn't say that either. Temporarily, you dispute what your opponent said. Really, they only paid for these for a few months before they... Before, that's true. Okay. If you look at it. If you said years, that's what I was asking. I'm sorry, they didn't pay for it. He put in the overtime. Right. There was a period of time when they said they paid them. That was relatively brief. Yes, and it was all in 2010. Right. And they weren't brief on page 10. No, I understood that. You said three years, and that's what I was asking. Okay. So, that was one of my points of why was he not just... It could have been very simple. They could have ordered him. I think of it as a brief where they could have said we're not going to pay but they didn't do that. I mean, they could have... I mean, where are you getting like a stop-off where they'd be like... Well, it's not... No, it's not that. Well, you know, like, the sort of bureaucratic oversight or...  that they had to use because they had to catch a earthquake and get it down there forever. Is that your argument? No, they said... Well, what's your argument that they let it go on for months? Well, they said they caught it in 2010 and then he put in these requests every day and thereafter and they didn't do anything. But, what does that mean? Does that mean when they finally catch him they don't publish it? He does it every day and it's too late to let it go on too long. Is that the answer? Well, I mean, the union they only have 30 days to disperse it. But, they don't have to disperse it online or fence from the union's point of view. So, the 30 days keep moving because he does it every day. That's correct. So, the filter you're getting 30 days is the limit. I mean, it doesn't bar it doesn't bar their you know, from stopping you know, from stopping to publish because you only have more than 30 days. That's right. Well, I think that they could have dispersed it. Sure, but of course they can't disperse it. Yes, it's very important. That's what the district court cites. It's important in what way? Well, the district court cites in his opinion this labor department guidebook and that guidebook wasn't completely quoted in its entirety and it is quoted in its entirety in the armory guidebook and the third point is that you have to stop stop because I need you to answer my question. My question is, is the failure to discipline evidence that what was happening was okay? Maybe it's just evidence that was not authorized. Is the failure to discipline establish that what your client was doing was authorized? Well, I think the district court held that and this was an unauthorized break. No, I was trying to answer my question. Is the failure to discipline evidence that was not authorized? Yes. And what is your authority for that? Do you use that occasionally? No. I think the authority is the Department of Labor and the Department of Education.   think    right thing to do. I think that is the right thing to do. I think that is the right thing to do. Yes. But I think that is the    I think that is the right thing to do. All right. Thank you very much. Mr. To the last  in our calendar, Rizzo versus ELVs.
judges: Tashima, Hurwitz, Adelman